IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-02660-LTB

DAVID P. ROCK,

        Plaintiff,
v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

Plaintiff, David P. Rock, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his applications for disability insurance benefits and for supplemental security income filed in January of 2010. [Administrative Record ("AR") 138, 144] After the applications were initially denied on July 2, 2010 [AR 65-84], an Administrative Law Judge ("ALJ") conducted an evidentiary hearing via video teleconference, on May 25, 2011, and issued a written ruling on June 1, 2011. [AR 12, 29, 65, 102] The ALJ denied Plaintiff's applications on the basis that he was not disabled because

he 1) was capable of performing past relevant work which does not require the performance of work-related activities precluded by his assessed residual functional capacity (Step Four); and, in addition 2) he could perform other work existing in significant numbers in the national economy (Step Five). [AR 21-22] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1] Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on July 7, 1959, was 49 at the time of his alleged disability onset date (of June 1, 2009), and had obtained a high school education and one year of training as an electrician. [AR 21, 39, 145, 159, 259] His past relevant work history was as a dishwasher, driver, and mover. [AR 21, 160] In his applications, Plaintiff alleged he became disabled in June 2009, due to problems with his right hip and right arm, and depression. [AR 67, 76] Plaintiff does not challenge the ALJ's determinations regarding his physical limitations, but rather contends that the ALJ erred in assessing his mental condition and his resulting impairments. As such, I set forth the factual record only as it pertains to his mental condition.

The very limited medical records related to Plaintiff's mental health first commence on February 20, 2010, when Plaintiff saw Carlos Rodriguez, Ph.D., for a consultive psychological evaluation. At that visit, Plaintiff reported a two-year history of depression – as well as current depressive symptomology – and some anxiety, but denied suicidal ideation, hallucinations or delusions, and behavioral manifestations of hypomania. [AR 206] He also reported a lengthy criminal history and a history of drug and alcohol use, indicating that he last consumed alcohol

two and one half weeks earlier.  He told the doctor that he had not had any substance abuse or mental health treatment, and was not taking any medications. [AR 206-07]  Dr. Rodriguez concluded that Plaintiff "presents with evidence of a major depression and anxiety disorder [with a] history of alcohol abuse," and diagnosed him with Major Depression; Anxiety Disorder, NOS; and Alcohol Abuse, continuous. [AR 207]  He further noted that "[t]he prognosis for change . . . is guarded given the chronicity and severity."  [AR 207]

Four months later, on June 23, 2010, Plaintiff reported to Brett Valette, Ph.D., for a second consultive mental/psychological evaluation.  Plaintiff reported that he had been depressed for years, and had covered it up with alcohol use, but that he had never been hospitalized for psychological reasons and did not take any medications. [AR 215-16]  Plaintiff indicated that he had not abused alcohol in three to four years, but continued to use marijuana. [AR 215-16]  Upon examination, Plaintiff had a sad affect, but denied anxiety and was oriented, not suicidal or psychotic, and had clear speech and thought processes and an intact fund of information. [AR 216]  On tests of memory and concentration, Plaintiff was able to recall 3/3 items immediately and 2/3 after five minutes, perform serial sevens backward from 100, think abstractly, and correctly spell "world" backwards. [AR 216]  Dr. Valette diagnosed him with Alcohol Dependency in Full Remission by patient report; Cannabis Abuse; Dysthymia (a chronic, less severe form of depression); and an Antisocial Personality Disorder, and he assessed Plaintiff a Global Assessment of Functioning (GAF) score of 55-60. [AR  217]  Dr. Valette opined that Plaintiff described an untreated dysthymia, probably had a long alcohol dependency problem, and indicated that Plaintiff needed a medication evaluation and therapy, but concluded that his "cognitive functioning was intact," that his "mental status exam, overall, was good." [AR 217]

On July 17, 2010, Plaintiff reported to Angelo Dilullo, M.D., for a consultative physical evaluation. [AR 221]  As part of that examination, Plaintiff reported that he had experienced depression his entire life and believed that he had self-medicated with alcohol and drugs, but he indicated that he now rarely drank and did not do any drugs. [AR  222]  Dr. Dilullo performed a "Mini-Mental Status Exam" which resulted in a score of 30/30. [AR 224]   Dr. Dilullo diagnosed Plaintiff with depression, in addition to his physical diagnosis, but did not assess any mental limitations. [AR 225]

Nine month later, Plaintiff reported to Spanish Peaks Mental Health Center on April 21, 2011, where he saw Tara Morrow, a social worker, for an initial psychological evaluation in order to seek treatment for his depression. [AR 290-92]  At that visit Plaintiff reported anxiety symptoms, panic attacks, a lengthy criminal history, and paranoia about the police. [AR 293-97] He further reported that he was not taking any medications, but that he used alcohol five to six times a month – including the day before the evaluation – and used marijuana two to three times weekly – including two days before the evaluation – and had used other drugs 22-49 days prior to the evaluation. [AR 293-294]  Upon examination, Plaintiff had a sad affect and depressed mood, but was oriented and had a neat appearance, an above average-appearing intellect, unremarkable speech and eye contact, and intact associations, judgment, attention, insight, and memory. [AR 296]  Ms. Morrow provided a provisional diagnosis of Major Depression, and assessed a GAF score of 55. [AR 297-98]

I note that the record before me contains additional records which indicate that, following the ALJ's ruling, Plaintiff began to receive regular mental health services – including therapy and medication – from June of 2011 through April 2012 at Spanish Peaks. [AR 303-44]

At the hearing in May 2011, Plaintiff – who specifically chose to proceed without representation – testified that his ability to work was detrimentally affected by his physical limitations, as well as his depression. [AR 51-54] He primarily testified that he had difficulty receiving medical treatment for financial reasons, which is confirmed by the records. [AR 35, 40, 51-52, 299-301] Regarding his activities, Plaintiff said he spent a typical day watching television, and that he walked to a grocery store a half mile away once or twice a day. [AR 43, 173-76] He said he prepared his own meals, cared for his personal needs, and did housework (vacuuming, dishes, and laundry). [AR 42-43] He indicated that he played video games with his brother. [AR 53-54] With regard to the functional limitations from his depression, Plaintiff testified that he believed that symptoms from his long-term depression were "why, every time I get a job and I start doing well, it never lasts more than a couple of years, and then I end up right back on the streets again . . .". [AR 51] In addition, Plaintiff testified that he did a "whole lot of nothing" in a typical day, and "I tried reading, but I can't concentrate long enough on it to – unless I sat down and read the whole book in one sitting, I would never finish it." [AR 42] As to his current alcohol and drug use, Plaintiff testified that he last smoked marijuana three or four days earlier and usually smoked "[a] few times a week," and he usually drank alcohol, on average, three times a week. [AR 48-49, 53]

Jill Radke, a vocational expert, also testified at the hearing. [AR 56-63] She first testified that a hypothetical individual, limited to a modified range of medium work, was capable of performing Plaintiff's past work as a dishwasher, as well as other work (as a hand packager, dining room attendant and food preparation) available in the Central Colorado region and the national economy. [AR 59-60] She also testified the same hypothetical individual, limited to a

modified range of medium work and further limited by a diagnosis of depression to low stress jobs that required only occasional decision-making and interaction with the public, was still capable of performing work as a dishwasher, as well as the other work identified as available in the Central Colorado region and the national economy. [AR 62]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity prevent

him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f).  Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the residual functional capacity to perform other work in the national economy in view of his age, education and work experience.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had acquired sufficient quarters of coverage to remain insured through September 30, 2011 and, as such, he had to establish disability on or before that date. [AR 12]  Then ALJ then ruled that Plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date (Step One). [AR 15]  The ALJ further determined that Plaintiff had the severe physical impairments of hip pain and osteoarthritis of the shoulders (Step Two), but that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 15-16]  In so doing, the ALJ found that Plaintiff's medically determinable mental impairment of depression did not cause more that minimal limitation in his ability to perform basic mental work activities and, therefore, was deemed "non-severe." [AR 15]

 The ALJ then determined that Plaintiff retained the ability to perform medium work, except that he was:  limited to frequent bilateral push/pull action of both upper and lower extremities due to shoulder and hip pain; restricted from climbing ladders, ropes, and scaffolds; limited to occasional stair-climbing and balancing; limited to frequent stooping, crouching,

kneeling and crawling; and he was to avoid concentrated exposure to heavy machinery and unprotected heights. [AR 17]  Based on this residual functional capacity assessment and the testimony from the vocational expert, the ALJ determined that Plaintiff was capable of performing past relevant work as a dishwasher (Step Four). [AR 21]  However, because Plaintiff had not performed the position of dishwasher at the required level of substantial gainful activity for the relevant year, the ALJ also determined that considering his age, education, work experience and residual functional capacity, Plaintiff could perform other jobs that exist in significant numbers in the national and regional economy (Step Five). [AR 22-23]  As a result, the ALJ concluded that Plaintiff was not disabled at both Step Four and Step Five of the sequential evaluation process and, therefore, was not under disability as defined by the SSA.

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).   Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)).  I may not re-weigh the

evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI.  ISSUES ON APPEAL

On appeal, Plaintiff argues that the ALJ erred in failing to weigh the evidence related to his functional limitations from his depression.  In her order, at Step Two of the sequential evaluation process, the ALJ determined that Plaintiff's "medically determinable mental impairment of depression does not cause more that minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." [AR 15]  In so doing, the ALJ summarized the records as follows:

> [Plaintiff] was seen for consultive psychological examinations in February and June 2010.  At the examination in February, [Plaintiff] reported quitting his last job in 2008 because his hours were cut.  He stated that he never received any mental health services, but had Alcoholic Anonymous due to a DUI charge as a teenager. [Plaintiff ] was assessed with depression, anxiety, and alcohol abuse.  Four months later, [Plaintiff] was seen for another psychological consultive examination, where he reported spending his time watching television and playing video games.  He stated that he had not consumed alcohol in three or four years but that he continued to smoke marijuana. [Plaintiff's] mental status examination yielded normal results, noting he displayed intact cognitive functioning, was alert and oriented, and related well to the examiner. [Plaintiff] was assessed with alcohol dependency in full remission, cannabis abuse, dysthymia, and antisocial personality disorder.  Medical records indicate that [Plaintiff] inquired about mental health treatment in January 2010, and was told there were no pro-bono service slots available with Spanish Peaks.  [Plaintiff] did not seek mental health services again until well over a year later in April 2011, when he was seen for an initial psychological evaluation at Spanish Peaks.  At his

>intact appointment, [Plaintiff] reported depression particularly in the prior year, and noted that he had never received mental health treatment of any kind. On April 21, 2011, therapist Tara Morrow assessed [Plaintiff] as suffering from moderate major depression. Agency notes indicate that [Plaintiff] is to begin therapy session in June of 2011. [Plaintiff] is not medicated for his alleged mental impairment, has never seen a therapist, and did only pursue a psychological evaluation and services a few weeks prior to hearing. There is no evidence within the medical record indicating that this condition imposes more than minimal restrictions on [Plaintiff's] ability to perform basic work tasks. [AR 15]

In making this determination, the ALJ considered four broad functional areas for evaluating limitations from mental disorders known as the Paragraph B criteria. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (noting that the ALJ must rate the degree of the functional limitation resulting from a claimant's medically determinable mental impairments in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation").

First, as to activities of daily living, the ALJ found that Plaintiff had only mild limitations in that the "[e]vidence indicates that [Plaintiff] is able to attend to his personal needs, fix easy meals, shop, and was able to perform light housekeeping." Second, the ALJ also found mild limitation as to Plaintiff's social functioning in that the "[t]estimony indicates that [Plaintiff] resides with his brother, and spends his time watching television, playing video games, and walking to the local store daily." Third, the ALJ found that Plaintiff's concentration, persistence or pace poses only mild limitation in that Plaintiff "identified that he spends his time watching television and playing video games, which requires a level of sustained concentration, persistence and pace." [AR 16] Finally, the ALJ noted that Plaintiff "had experienced no episodes of decompensation which have been of extended duration . . . in either work or work

10

related settings." Thus, because Plaintiff's medically determinable mental impairment caused no more than mild functional limitation, resulting in no episodes of decompensation, the ALJ found that his depression was non-severe at Step Two of the sequential process. [AR 16]

Plaintiff first argues that this determination was erroneous in that the ALJ failed to "properly weigh the medical opinions" in the record when concluding that Plaintiff's mental impairment of depression was not severe. Specifically, he asserts that the ALJ failed to weigh the medical opinions in the record – of major depression and an anxiety disorder by Dr. Rodriguez; dysthymia, an antisocial personality, and assessed GAF of 55-60 by Dr. Valette; depression by Dr. Dilullo; and major depressive disorder, moderate, and assessed GAF of 55 by Tara Morrow – when assessing the resulting level of functional impairment as mild and, thus, non-severe. However, the diagnoses relied upon by Plaintiff only establish the presence of a medically determination of impairment (depression), not the resulting limitations such impairment has on Plaintiff's mental ability to perform basic work activities. The question at Step Two is not whether Plaintiff could experience symptoms from his depression, but rather whether he can show that his depression would have more that a minimal effect on his ability to do basic work activities. *See Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988)("[p]ursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs")(*citing* 20 C.F.R. §§ 404.1521(b), 416.921(b)). Contrary to Plaintiff's argument, he has not shown that his depression significantly limits his ability to do basic work activities, as the medical records are devoid of any such evidence and his testimony that he could not hold a job

and lacked concentration due, perhaps, to his depression, are belied by other evidence in the record, including his self-reported daily living activities. Because Plaintiff is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *Williams v. Bowen, supra,* 844 F.2d at 751; *see also Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997)(ruling that although a claimant is only held to a "de minimis" showing of impairment, "the claimant must show more than the mere presence of a condition or ailment.")

In so ruling, I reject Plaintiff's argument that the GAF scores assessed by Ms. Morrow and Dr. Valette (in the range of 55 to 60), constitute opinions that he is moderately impaired to do basic work activities by his depression. *See generally Ceballos v. Astrue*, 2009WL2475472 (D.Kan. 2009)(unpublished)(a GAF score in the range of 51–60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning"). Rather, I agree with the Commissioner that an assessed GAF score is not a medical opinion of functioning or ability to perform work activities. *See generally Bronson v. Astrue,* 530 F.Supp.2d 1172, 1181 (D.Kan. 2008)(noting that an unexplained raw GAF score "does not address which particular aspects of functioning is primarily reflected," as such score "may be addressing overall symptoms or social functioning rather than occupational functioning, which is the issue at step two of the sequential evaluation process"); *see also Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004)(not selected for publication)(noting that a GAF score, standing alone, "does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.")

I likewise reject Plaintiff's argument to the extent he contends that the ALJ improperly relied on the opinion of Donald G. Glassco, M.D., to conclude that Plaintiff's functional

limitations based on his depression were only mild. [AR 70-71]  First, the ALJ did not discuss or even mention Dr. Glasco or his determinations.  This is because Dr. Glassco's opinion (that Plaintiff's functional limitations from his mental disorders were mild) was not contained in Plaintiff's medical records, but instead was part of a state agency determination/explanation in support of the Initial Disability Determination denial in July of 2010. [AR 65-84]  *See generally* 42 U.S.C. §405(b); §421.  As a result, the ALJ specifically gave "no weight' to the functional capacity assessment on the basis that it was completed by a single decision maker. [AR 20]  As such, Plaintiff's assertion that the ALJ improperly relied on Dr. Glasco's "opinion" is non-availing.

Finally, I address Plaintiff's related argument that the ALJ failed to develop the record concerning the effects of Plaintiff's depression on his ability to function at work.  Specifically, he argues that the ALJ failed to elicit meaningful testimony from him describing those effects at his hearing, and that the ALJ failed to develop the medical records to determine the basis for his assessed GAF scores in the moderate range.

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). "A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* (*quoting Henrie v. U.S. Dept. of Health & Human Services,* 13 F.3d 359, 360-61 (10th Cir. 1993)).  "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  *Branum v. Barnhart*,

*supra*, 385 F.3d at 1271 (*quoting Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996)). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Henrie v. Dept. of Health & Human Services*, *supra*, 13 F.3d at 361. Although this duty is present when the claimant is represented by counsel, it "is heightened when the claimant is unrepresented." *Id.* (*citing Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)).

In support of his argument that the ALJ failed to adequately develop the record as to how his depression effects his ability to function in an employment setting, Plaintiff first notes that when the ALJ asked him what mental impairments affected his ability to work – and he replied "depression" – the ALJ did not seek any follow-up or clarification about how his depression so interferes. [AR 51]

Although Plaintiff was not specifically asked by the ALJ about how his depression effected his ability to work, Plaintiff was asked and went on to testify at the hearing, however, that he cooked, vacuumed, washed dishes and laundry, and performed personal care tasks. Plaintiff further testified that he spent his time watching television and playing video games, and he took daily half-mile walks to the local grocery store. [AR 18] This testimony is consistent with Plaintiff's functional report, dated May 17, 2010, in which he reported independence as to personal care, as well as the ability to fix easy meals, wash dishes and laundry, shop, and perform simple household tasks. [AR 17] Plaintiff stated that he spends his time watching television, and does not socialize with others. [AR 17-18] In determining the Plaintiff's residual functional capacity – or his ability to do work despite his impairments – the ALJ concluded Plaintiff's extensive range of daily living activities stands in contrast to his allegations of

disabling symptoms. [AR 19]  The ALJ further noted that he left his last job, in 2008, in order to find better paying work, not because he was unable to perform it, and although he first inquired about mental health treatment in 2010, he did not complete an initial appointment until April of 2011. [AR 18]   As such, the record provides sufficient evidence – including Plaintiff's own testimony – for the ALJ to conclude that his depression caused only mild limitation in his functioning and the ALJ's questioning of Plaintiff was sufficient to meet her duty to inquire. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374–1375 (10th Cir.1992)(when analyzing an ALJ's questions, the issue is whether the ALJ asked sufficient questions to ascertain "(1) the nature of the claimant's alleged impairments, (2) what on-going treatment and medication the claimant's was receiving, and (3) the impact of the alleged impairment on the claimant's daily routine and activities").

To the extent that Plaintiff contends that the moderate GAF scores assessed by Ms. Morrow and by Dr. Valette are indicative of impairments in occupational and/or social functioning and, as such, that the ALJ "should have re-contacted these sources to clarify the basis for these GAF scores," I disagree.  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004).  It is the inadequacy of the evidence the ALJ receives from the claimant's treating physician "that triggers the duty to re-contact that physician." *White v. Barnhart*, *supra*, 287 F.3d at 908 (*citing* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)).  I note that the underlying regulations relied upon by these cases have since been amended, effective March 26, 2012, but this Court reviews whether the ALJ

applied the correct legal standard at the time that she issued her decision in June 2011. *See Coffel v. Astrue,* 2012WL5831194 (D.Kan. 2012)(unpublished).

In her order, the ALJ specifically noted that: "Regarding available medical opinions, [Plaintiff] testified that he has not been seen by a physician since 2007, which is approximately two years prior to the alleged onset date of disability. Thus, the medical evidence of record contains neither medical source statements nor functional assessments from treatment providers." [AR 20]  And, as discussed above, the GAF scores assessed did not constitute opinions of Plaintiff's ability to perform basic work activities in light of his depression. I note that neither Ms. Morrow – a social worker who evaluated Plaintiff one time for intake at Spanish Peaks – nor Dr. Valette – who provided a one-time consultive psychological evaluation at the request of the Commissioner – are a treating source. *See* 20 C.F.R. §§ 404.1502, 416.902 ("[t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"); *McDonald v. Astrue,* 492 Fed.Appx. 875, 881 (10th Cir. 2012)(not selected for publication). And the consultive report provided by Dr. Valette cannot be deemed incomplete under the regulations. *See* 20 C.F.R. § 416.919n(c)(6)(providing that the absence of an opinion about the claimant's abilities, despite his or her impairments, to perform certain work-related activities  in a consultative examination report "will not make the report incomplete.")

Based on the foregoing, I find no error with respect to the ALJ's duty to fully develop the record in this case. I conclude that neither Plaintiff's testimony, nor the assessed GAF scores implicate the ALJ's duty to develop the record by asking additional questions or by re-contacting

16

Ms. Morrow or Dr. Valette for clarification of their GAF scores, or for further information in the form of an opinion as to how Plaintiff's depression effects his ability to perform basic work activities. Even taking into account the added burden that applies to an unrepresented claimant, the ALJ did not breach the duty to develop the record.

Therefore, as to the ALJ's determination that Plaintiff's medically determinable impairment of depression is not severe, at Step Two in the sequential process, I find no error in that the evidence relied upon by the ALJ was assessed properly and is sufficient to support her findings that Plaintiff's levels of functional impairment was mild.


ACCORDINGLY, for the foregoing reasons, I AFFIRM the Commissioner's final order.


Dated: November  21 , 2013 in Denver, Colorado.

                                        BY THE COURT:

                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE